(22 Misc. Rep. 126.)

BIEN v. BIXBY.

(Supreme Court, Appellate Term. December 27, 1897.)

1. DISPOSSESSION OF TENANT—RIGHT TO REDEEM.
    Although under Code Civ. Proc. § 2256, a dispossessed tenant is only required, as a basis for proceedings to redeem the premises, to tender the amount of rent actually due, with the costs and charges of the summary proceedings, yet the final adjustment of the amount to be paid by him proceeds upon general principles of equity, and is not strictly limited by the covenants of the lease, which are, of necessity, inapplicable to rights arising between the date of dispossession and that of the petition for repossession.

2. SAME—LIABILITY OF TENANT.
    Upon final adjustment in such a case, allowance is properly made to the landlord for expenses, in complying with orders of the building department, in making reasonable alterations and repairs essential to the successful management of the property, in so far as they inure to the benefit of the redeeming tenant, in insuring the property, and in providing proper custodians for it, and for legal services necessarily incurred in the dispossess proceedings and surrounding matters.

3. SAME.
    If, during the intermediate period, the landlord has leased the premises for the benefit of the redeeming tenant, he may also be credited with an appropriate rental for furnishings supplied by him and affording part of the consideration for rents thus received, and may be allowed for discounts and remissions granted to the intermediate tenant in the exercise of sound judgment and for good reasons. And in such a case he is not to be charged

for rent, unless it was actually received, or his failure to collect it was due to negligent administration.

4. SAME.

In such case, however, he is not entitled to commissions upon the rents received by him, and credited to the redeeming tenant.

5. SAME—LEASE BY LANDLORD—DURATION OF TERM.

Under Code Civ. Proc. § 2258, providing that if, after the warrant is issued in proceedings to remove a tenant, the petitioner executes a lease, the lessee thereunder shall hold the premises until the 1st day of May next succeeding a redemption by the tenant dispossessed, the term "redemption" relates to the date of tender by the redeeming tenant, under section 2256.

Appeal from Eighth district court.

Action by Franklin Bien, receiver of the Casino Company, against Robert F. Bixby, individually and as trustee, for redemption of the lease and repossession of the premises, after final order in favor of the landlord, and execution of warrant dispossessing the tenant in summary proceedings. From the judgment, both parties appeal. Modified.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Samuel Untermyer, Moses Weinman, and Franklin Bien, for appellant Franklin Bien.

Samson Lachman and George Freifeld, for appellant Robert F. Bixby.

BISCHOFF, J. Both parties to the proceeding appeal from the final order made by the justice, fixing the sum which should be paid by the tenant petitioner to the landlord as a condition to repossession; each party claiming that too much has been credited to the other, and too little to himself, in certain instances, the petitioner's most strenuous objection being taken to the allowance to the landlord of sums expended by the latter in rendering the building fireproof, at the direction of the department of buildings, and in remodeling the building for use as a theater, instead of as a concert hall, in which condition it had been left by the tenant when dispossessed.

The merits of the case were considered at some length in the opinion delivered upon the last appeal to this court (Bien v. Bixby, 18 Misc. Rep. 415, 41 N. Y. Supp. 433); and the justice below has followed, in general, the principles applicable to the matter so far as were there outlined. We have held that while the petitioner's tender to the landlord of the amount of rent actually due, together with the costs and charges of the summary proceedings, was sufficient as forming the statutory basis of these redemption proceedings (Code Civ. Proc. § 2256), the final adjustment of the amount to be paid was not dependent upon the claim for rent, but was to proceed upon general principles of equity; and any construction of our former opinion whereby the petitioner contends that the adjustment was held to be strictly limited by the covenants of the lease must result from a misconception of what was decided. Rights of the parties, founded upon circumstances arising during the period when the premises were placed in the landlord's custody, intermediate the tenant's dispossession and his petition for repossession, are not, in their nature, to be measured by the lease, which purports only to express the agreement

governing the tenancy, and which cannot be construed as looking towards the tenant's summary removal and happenings attendant upon it.    The execution of the warrant in summary proceedings brought the agreement to an end, and, when dealing with the premises thereafter, the landlord could certainly not be bound to follow the strict terms of that agreement, at the peril that the tenant, electing to redeem the lease, should be entitled to the benefit of all expenditures, not covered by the instrument, which the landlord found it necessary or expedient to undergo.    Were the contrary held, the result would be to place the landlord at the mercy of the dispossessed tenant, since he would be forced to the alternative of receiving an inadequate rental, for his failure to place the building in a desirable condition, or of making alterations which would inure wholly to the benefit of the former tenant should he elect to redeem, which election would probably be induced by the enhanced value of the building, and yet might well be unavailed of had the landlord failed to make the improvements, trusting to the chance that there would be a redemption and the subsequent receipt of the rent reserved by the lease.    If this were the situation, the order to be made by the trial court would certainly not be such "as justice requires" (Code Civ. Proc. § 2259); and we have no hesitation in holding that the petitioner's contention does not accord with the intention of the legislature.    Therefore, although there may not have been charges of which the payment was expressly assumed by the tenant under the precise terms of the lease, the landlord may still be allowed the items of expense undergone by him in compliance with the orders of the building department, and in making alterations which were essential to the successful management of the property, if, upon general principles of justice and equity, the tenant should be charged with the expense; and it accordingly becomes expedient to consider the situation of the parties existing by virtue of the lease, the dispossess proceedings, and the tenant's proposal to redeem.

The landlord owned the ground, and the tenant the building, the lease of the ground having been made for a term of 10 years, with an agreement by the landlord to purchase the building at the expiration of the term at a price measured by its reasonable value, but not to exceed $50,000.    The lease has still an unexpired term of over five years, if reinstated, and all improvements to the building will belong exclusively to the tenant for that period; but if, at the expiration of the term, the building is found to be worth more than $50,000, the landlord would be the gainer to the extent of the excess; and it might be that the improvements in question would suffice to make the value of the structure greater than this sum, even after five years' use by the tenant.    Accordingly, this case is not wholly analogous to that of a mortgagee in possession of property, who makes improvements which inure to the benefit of the redeeming mortgagor, as suggested by the landlord appellant, since here the improving party had a possible interest in the property, which might be a valuable interest; and, while we can have no doubt that the landlord should be allowed the expense of all reasonable alterations, repairs, and additions to the premises which would wholly benefit the redeeming tenant, there still might

remain a question as to whether some of the expense would not be found, at the end of the term, to have been for the landlord's own benefit.    The matter must be considered only as of the time when the lease shall expire, because the past benefit from the improvements, pending the tenant's repossession, is covered by the rent obtained by the landlord from new tenants, during the period of dispossession, and credited to this tenant upon the rent due under the lease.

It appears from the evidence, however, that the landlord caused the building to be appraised in the year 1896, in order that he might make application for the proper amount of fire insurance to cover its value, and this appraisal resulted in the value being found to be $50,000, at a period after all these alterations had been made.    There is no reason to assume that the landlord sought to have the value fixed at less than what the building was really worth.    On the contrary, his desire and interest at the time was apparently to have the full value reached, in order that the insurance effected might be adequate; and that this was the full value the tenant did not attempt to dispute upon the trial, nor was any other evidence adduced by either party upon this subject.    Thus, the justice was, we think, well authorized in charging the petitioner with the expense of these alterations, under the circumstances, since the work done, both in compliance with the orders of the building department and in remodeling the theater, in order that it might be made to produce revenue, was wholly for the benefit of the building itself, the petitioner's property; and, so far as it resulted in enhancing the value of the premises when out of his possession, he obtains the benefit of this when credited with the rental yielded through the leasing of the property during that period.    If, at the expiration of the lease, these alterations shall have benefited the building, the agreement between the parties requires that the landlord shall pay their then value when purchasing the structure; and if he pays the upset price of $50,000 as the reasonable value, should it be such, it cannot be assumed that the payment would be inadequate, since the building was worth no greater sum when the alterations were newly made.    Assuming, as is most favorable to the tenant, that no covenant of the lease called for his making these alterations as ordered by public authority, it is certain that the landlord was not chargeable with the expense, unless the building had been abandoned to him: and, since the failure to comply with the order would have resulted in the loss of all use of the building for the purpose to which it was adapted, the charges must certainly be viewed as incurred on behalf of the party entitled to the exclusive enjoyment of the property,—this petitioner,—and he should bear them.  · It clearly appears from the evidence that the remodeling of the theater was not an improvident undertaking; that the circumstances called for some such action by the landlord at the time; and that the charges incurred were reasonable.    He was placed in a position in which he was required to act both in behalf of the tenant should there be redemption, and in behalf of his own interests should the lease remain unredeemed; and the question whether or not his administration was prudent must be determined with regard being had to this dual aspect of the subject.    That in the matter of these repairs and alterations

there was no mismanagement of which the tenant could complain, we are well prepared to agree with the justice below, and proceed to consider the further items which are in dispute.

When dispossessed, this tenant appears to have removed all fixtures from the premises, such as theater seats and general furnishings of a place of amusement, and it became necessary for the landlord to refurnish the building if his efforts to secure another tenant were to be successful. Accordingly, he did procure such furniture as was essential to a proper equipment of the place, and rented the premises, so furnished, or so to be furnished, to Thomas Canary, the rent received from this letting having been allowed to this petitioner, as before noted, in reduction of the sum due from him to the landlord for rent in arrear under the lease which is sought to be redeemed. The justice below has made an allowance to the landlord of the reasonable rental value of this furniture for the period of its use by Canary, upon the basis of 10 per cent. of its actual value; and the allowance is disputed by both sides, the petitioner claiming that none should be made, and the landlord that the basis of computation should be 20 per cent. instead of 10 per cent. Evidently the justice found himself impressed with the testimony to the effect that 10 per cent. was the reasonable ratio to be adopted for this computation, and we cannot say that the other evidence adduced in favor of an allowance of 20 per cent. was entitled to the greater weight. On the other hand, the landlord was certainly to be allowed the reasonable rental value of his furniture, the use of which, together with the use of the building, was clearly the inducement to the payment by Canary of an entire sum, which sum has been placed wholly to the petitioner's credit, and there should accordingly be placed to the landlord's credit the proportion of the rent which was not produced by the petitioner's building, but through the use of the landlord's own personal property. The item, as allowed, should stand.

The next point to be considered has to do with the landlord's dealings with Canary touching the latter's tenancy during the period when this petitioner was out of possession, it being claimed that the landlord did not obtain sufficient rent from such tenant, and wrongfully entered into an agreement with him releasing him from payment for the alterations ordered by the building department. It was satisfactorily made to appear that the landlord, when reducing the rent reserved in the Canary lease, acted reasonably for the best interests of the property, since, while insistence upon the letter of this lease was within his clear legal right, the prospect was that such insistence might well have resulted in the loss of the tenant, and, with the tenant, all revenue from the building, leaving but a cause of action, collection upon which may have been but a dubious possibility. The rent, as originally agreed upon with Canary, was shown to have been unwarranted by the value of the premises to the tenant; and there was no reasonable expectation of securing from a new tenant anything more than the amount which, under Canary's lease as modified, the landlord actually received. Therefore it was quite proper for the justice to find that there had been no negligence in this instance of the landlord's management of the property.

With regard, also, to the agreement entered into between the land-
lord and Canary, at the time when the alterations which we have
referred to were ordered by the building department, that Canary
should not be required to defray the expense of such alterations, the
instrument reciting that the parties agreed "that the alterations and
repairs so required   *   *   *   are not of the nature of repairs or re-
quirements to be borne by said Canary according to the true intent
and meaning of said [Canary's] lease," we think that the landlord's
course cannot properly be complained of by the petitioner.    The
probabilities strongly bear out the fact that the making of these al-
terations, involving an expenditure of more than $9,000, was never
within the contemplation of the parties, as being a part of Canary's
obligations under his lease; and if this were the fact, although the
lease itself may have contained phrases broad enough to cover such
alterations as within Canary's covenant to repair, the landlord acted
with propriety when adopting a modification of the lease, which
should express the true intent of the parties, under the extraordinary
circumstances which had arisen, without requiring Canary to invoke
the relief which a court of equity would afford him upon the admitted
facts.    If the expense was not within Canary's agreement, it was
necessarily to be borne by the party who owned the building, and
thus was properly defrayed by the landlord for the account of this
redeeming tenant, as we have said.

Still another question arises out of the making of these alterations,
and here dissatisfaction with the result reached by the justice is ex-
pressed on either hand.    The work in question necessitated the clos-
ing of the theater for six weeks during Canary's tenancy, and it was
agreed in writing that the rent for this period should be remitted by
the landlord, who, in turn, was to be given possession of the building
during the time, in order that he might have full control of the work.
This agreement was carried out, as the justice has found, but he has
made allowance to the landlord for but one-half of the rent thus re-
mitted, in effect charging him with the receipt of a sum which he
never received, and which the petitioner should have proven to have
come into the landlord's hands if he wished to be credited with the
amount.    The rent thus remitted amounted to $3,750, and the land-
lord has been held accountable to the petitioner for $1,875 on account
of such rent.    This charge was, it appears, inequitable, since the evi-
dence does not support any finding that the failure to collect the sum
was the result of a negligent administration by the landlord, and the
justice, indeed, has not so found.    The order of the building depart-
ment necessitated the closing of the building, and this gave rise to
the situation wherein the rent, so far, was suspended.    The landlord
did not receive the rent, and should not be made to pay it from his
own pocket, for the benefit of the petitioner, who is entitled only to
the money which was actually produced by the building, or which
would have been produced but for some mismanagement by the land-
lord of a degree which might evince a clear disregard of the peti-
tioner's rights.    Failing this fact, the apportionment of the sum be-
tween these parties must be based upon the assumption that the land-
lord was benefited in some way through Canary's tenancy of the

building; but clearly he was not, since the avails of that tenancy are credited wholly to the petitioner, and, accordingly, the matter is not one which justifies the resort to an apportionment.

The petitioner objects to the allowance of the amount of premiums paid by the landlord for insurance of the building against loss by fire during the period subsequent to the dispossession, but it appears that the item was properly allowed. The question is simply: For whose benefit did the building thus remain insured? Obviously for the petitioner's benefit, since he maintains his ownership of the subject of the insurance, the protection afforded to the property having been secured, as it now appears, to preserve it for his ultimate enjoyment. Had the premises been rendered valueless by fire, there would probably have been no redemption of the lease; but, the building now standing uninjured, the party who asserts his right to it must certainly bear the expense reasonably incurred for its protection, and cannot be heard to say that, because there has been no actual loss, there was no risk to be guarded against. If the objection to this item were upheld, it could only be through placing all the risk of loss upon the landlord, and permitting the petitioner to reap the exclusive benefit arising from a fortunate outcome of the hazard.

We think that the allowance for expenses incurred by the landlord on account of legal services necessarily secured in the dispossess proceedings and surrounding matters is to be upheld, as against the contention that no sum whatever could be credited to the landlord on account of his actual expenditure in this regard. The item is not assailed as excessive upon the present appeal; and as we view the intent of the statute, which regulates the adjustment of the account between the parties, the object of the adjustment is to place the landlord and tenant, so far as may be, in the position in which, but for the dispossess proceedings, they would have remained. Those proceedings were brought about by the tenant's default, not because of the landlord's choice; and the lattter should fairly be reimbursed for the necessary expense incurred by him in the matter. It may be, as claimed, that the item is not comprised as among the "costs and charges" which form the subject of the redeeming tenant's tender (Code Civ. Proc. § 2256); but the scope of the adjustment, upon the hearing of the proceeding, is not limited by the tender, and extends so far as substantial justice requires, as we have pointed out before.

Upon the same principle, the landlord was properly given credit for $54, representing his outlay on account of wages of a gasman, electrician, and janitor employed as custodians of the buildings, and in attending to its proper lighting, for the period during which the marshal was engaged in executing the dispossess warrant.

The justice properly disallowed the credit claimed by the landlord for commissions upon the rent collected from Canary, since it was found that no actual payment was made on account of services of a collection agent; and, in any event, it would appear that it was the landlord's duty to make collection of this rent without compensation. Had the petitioner remained in occupation, the landlord's collection of the rent reserved in the lease would have admitted of no reward; and there is no reason for charging the petitioner with commissions

upon the collections made by the landlord from the substituted tenant when such petitioner now offers to pay over the full amount of rent which would have been due from him, without putting the landlord to the expense which might be entailed in its collection.

It appears that, through some inadvertence, the justice omitted from the summary statement of the account, as embodied in the final order, an item of $248.50, to the credit of the landlord, which was recited by the order, specifically, to have been allowed, and there should accordingly be a modification of the order in this regard.

We conclude that the order, as modified by the placing of the items noted ($1,875 and $248.50) to the landlord's credit, as in addition to the sums found by the justice to be receivable by him from the petitioner, should be affirmed, without costs.

It is noted that the justice has not fixed the date upon which the petitioner shall be let into possession, as against the present tenant, whose lease, under the terms of the statute, endures to the 1st day of May next succeeding the redemption, the order being framed in the words of the statute. The petitioner made his tender prior to May 1, 1897; and it has not been decided specifically whether the rights of the parties, with regard to Canary's lease, became fixed at that date, or were in abeyance until the date of the final order, in which last event that lease would not be determined until the succeeding month of May. We think that the statute can only be read as intending that the redemption, so far as it becomes important to the fixing of the date when an existing lease shall expire, relates to the day of the tender (Code Civ. Proc. §§ 2256, 2258), and that, therefore, the petitioner is entitled to possession upon his compliance with the final order, as modified.

If the parties are entitled to any further direction, as defining their subsequent rights in the matter, the question may be considered upon the settlement of the order to be entered upon this decision, of which two days' notice should be given. All concur.